# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
ALDYKIEWICZ, SALUSSOLIA, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private First Class SERGIO A. REYES-LESMES**
**United States Army, Appellant**

ARMY 20180396

Headquarters, 82d Airborne Division
Christopher E. Martin and Fansu Ku, Military Judges
Colonel Travis L. Rogers, Staff Judge Advocate

For Appellant: Philip D. Cave, Esquire (argued); Captain James J. Berreth, JA; J. Thomas Province, Esquire; Philip D. Cave, Esquire (on brief and reply brief); Philip D. Cave, Esquire (on supplemental brief).

For Appellee: Captain Christopher T. Leighton, JA (argued); Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Hannah E. Kaufman, JA; Captain Christopher T. Leighton, JA (on brief); Major Brett A. Cramer, JA.

4 November 2020

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WALKER, Judge:

Appellant asserts that the military judge erred when she failed to give a reconsideration instruction to the members after she examined the initial findings worksheet and returned the members for further deliberations.[1] We find that the

---

[1] Appellant asserted three other assignments of error which were: (1) the military judge erred in failing to instruct the members on a required *mens rea* for the sexual assault offense of which he was convicted; (2) the military judge erred in not giving the mistake of fact instruction; and (3) the evidence was not legally and factually sufficient for all findings of guilty. We find these assignments of error lack merit

(continued . . .)

military judge did not direct the members to reconsider their findings but rather instructed the panel to correct an improperly completed findings worksheet. As such, we hold the military judge was not required to provide a reconsideration instruction to the panel members and affirm.[2]

## I. BACKGROUND

### A. Appellant's Sexual Assault of BA

Appellant and BA first met in 2014 at appellant's CrossFit gym in South Carolina. Appellant owned the gym with his wife. Appellant and another one of his male friends, BC, routinely worked out together with BA and trained her so she could be a CrossFit coach. In 2016, appellant sold the gym and enlisted in the Army. BA and appellant kept in touch after he joined the Army. Following the completion of basic training, appellant was assigned to Fort Bragg, North Carolina.

In April 2017, BA and BC drove from South Carolina to Fort Bragg to visit appellant and his wife over a weekend. After arriving at appellant's residence on Friday evening, BC and BA socialized with appellant and his wife. The night ended without incident. The next morning, appellant, BA, and BC worked out together in appellant's garage. The three later went out to dinner together at a barbecue restaurant while appellant's wife and children stayed home. At the restaurant, BA consumed a full meal of meat and side dishes. Appellant and BC drank beer at dinner; BA, who was twenty years old at the time, did not consume alcohol at the restaurant.

After dinner, they drove back to Fort Bragg. Before returning to appellant's residence, they stopped on post and appellant purchased a bottle of vodka. Once back at appellant's residence, appellant and BC continued drinking. Although

---

(. . . continued)
and do not warrant discussion. We also note that although appellant sought to submit matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), asserting unreasonable post-trial delay, that submission was denied as untimely. Notwithstanding our denial, this court considered the post-trial processing of appellant's case pursuant to our Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 [UCMJ] review authority and determined no relief was warranted.

[2] An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of violating a lawful general regulation and one specification of sexual assault, in violation of Articles 92 and 120, UCMJ (2016). The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for nine years, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand.

appellant knew BA was not of legal drinking age, he prepared two mixed drinks for her with the vodka he just purchased. While appellant, BC, and BA drank and socialized, appellant's wife and children were upstairs sleeping.

After consuming both drinks over the course of a few hours, BA felt sick and "super out of it and dizzy." At some point, appellant's wife awoke to the sound of voices and went downstairs to check on appellant. She noticed BA was not feeling well and assisted BA to the couch so she could lie down. Eventually, BA went to sleep on appellant's couch, though she intermittently woke up and vomited into a bucket that appellant's wife placed next to the couch. Appellant and BC continued drinking into the early morning hours. When they finished drinking, appellant escorted BC upstairs to appellant's son's room where BC would eventually sleep. As the two were walking upstairs, appellant told BC that they should "Eiffel Tower" BA, meaning put her in a sexual position with "one person in the front, one person in the back." Believing appellant was joking, BC declined and went to sleep.

BA's next memory was waking up and feeling appellant's tongue and fingers inside of her vagina. She was on her back on the couch and saw appellant's head between her legs. BA felt like she was "frozen" and everything went "black." BA then awoke to appellant positioned on top of her and inserting his penis into her vagina. BA testified she knew what was happening, that she did not want appellant to penetrate her, and that at the time she felt like she could not do anything because she felt "frozen." BA's next memory was waking in the morning and smelling her vomit in the bucket nearby and noticing that appellant was sleeping next to her on the couch.

Shortly after BA awoke, appellant woke up and carried BA upstairs to his bedroom. BA complained to appellant about her head hurting, to which appellant replied, "more than that should be sore." After leaving appellant's residence later that morning to return to South Carolina, BA reported the sexual assault to BC and then to her family.

*B. Initial Instructions on the Sexual Assault Specifications*

The government charged appellant's sexual assault of BA in three distinct specifications, each alleging different means by which appellant facilitated the sexual assault. All of the specifications alleged identical sexual acts, specifically appellant's penetration of BA's "vulva with his fingers, tongue, and penis." Specification 1 alleged appellant sexually assaulted BA while she was asleep; Specification 2 alleged appellant sexually assaulted BA while she was incapable of consenting due to impairment by an intoxicant; Specification 3 alleged appellant sexually assaulted BA by causing bodily harm to BA, with the alleged sexual acts as the bodily harm. All parties agreed at trial that the specifications of Charge II were charged in the alternative.

Prior to findings, the military judge instructed the panel "what you have to decide is whether he's guilty of any one of the three" sexual assault specifications under Charge II. Without objection, the military judge further instructed the members that they could find appellant guilty of none of the sexual assault specifications or they could find him guilty of only one of the specifications, but not more than one. When instructing the members on voting procedures and using the findings worksheet as an aid in recording the findings, she instructed the members, "[a]s for Charge II, you see there you have three choices, so start with a vote, Specification 1, guilty or not, or Specification 2, and then Specification 3." She further instructed the members that if they found appellant guilty of any specification, then they must also find him guilty of the corresponding charge. Finally, the military judge instructed the panel president to cross out anything on the findings worksheet that did not apply.

### C. Supplemental Instructions on the Sexual Assault Specifications

After approximately two hours of deliberations, the panel announced it had reached a verdict. The military judge reviewed the findings worksheet and determined it was not in proper form with respect to Charge II and its specifications. The military judge informed the panel president that she was returning the findings worksheet "for a little clarification." The military judge noted that it appeared that the panel president had followed her instructions on crossing out what was not applicable. The military judge advised the panel president to circle what was applicable and told him to remember her instructions on Charge II.[3] The panel president requested additional clarification. The military judge stated "[r]emember on Charge II, it is either Specification 1, Specification 2, or Specification 3, or neither."

At that point, the panel president indicated he had an additional question. The military judge instructed him to write down his question rather than ask it in open court. He did as instructed and wrote down the following:

> How do we determine which spec we select and does it matter? We did not make a collective decision on which spec to select.

After reviewing the question, the military judge stated,

> So it looks like I'm probably going to send you back for another decision and I am going to re-read portions of it,

---

[3] The military judge concluded that the findings worksheet was in proper form with respect to the panel's finding of guilty as to Charge I and its specification.

> my instructions to you. So it looks like you understand Charge I so I am not going to repeat that. And the only thing I would add when I return [the findings worksheet] to you is to—so you crossed out the portions that were—weren't applicable and didn't reflect your findings. Now circle the one.

She reminded the panel about her instructions concerning Charge II and its specifications, specifically that the panel could return a finding of not guilty to all three specifications or guilty as to only one of the sexual assault specifications, but not more than one. She further instructed the panel that a finding of guilty as to any of the three specifications required six votes. If the panel voted on a specification and obtained the required six votes, then the panel was to cease voting on the remaining specifications of Charge II and if they did not obtain the requisite six votes on a specification then they were to move on and vote on the next specification of Charge II. The military judge advised the panel that the decision as to which specification of Charge II to vote on first was up to the panel president, subject to a veto by the majority of the other members. She then sent the panel back to the deliberation room to "look at Charge II again."

We glean from the record that the panel had crossed out "Not Guilty" for each of the specifications of Charge II however, the panel had neither circled nor crossed out the word "Guilty" for any of the three specifications.[4] Further, the words "Not Guilty" for Charge II were crossed out and the word "Guilty" was circled.

It was several minutes later when the military judge finally disclosed the panel president's question to both parties, but she never disclosed the exact nature of the findings worksheet to either party prior to sending the panel back for additional deliberations. Approximately ten minutes after the panel returned to the deliberation room, the military judge convened an Article 39(a), UCMJ, session and directed the bailiff to pass the panel president's written question to both trial and defense counsel. After both counsel had an opportunity to review the written question, the military judge advised the parties:

> All right. So counsel, the reason I sent them back there and it is to make it clear as to Charge II because they have no—based on this question, it tells me that they have not—they voted on the Charge. They did not vote on individual specifications, which was why I re-instructed

---

[4] We note that the military judge did not photocopy the findings worksheet and have it marked as an appellate exhibit thereby memorializing for the record the condition of the findings worksheet at that point in the trial.

5

on the fact that he can be found either not guilty to Charge II or guilty only as to the one, but not all three and certainly not more than one. And that they are to have the required two-thirds vote in order to find your client guilty. So they did not look at the portion of my instruction as to you vote on the specification before you move to the charge.

Are there any questions to this court regarding that? And do either party believe—this is the reason why I do not believe it is a reconsideration since they did not vote on the specification and they need to vote on the—each specification regardless of the order, since that is not up to me to dictate to them which order they vote. And which was why I sent them back. Are there any questions or concerns or differences of opinion from either party regarding that?

Both trial and defense counsel replied, "No, Your Honor." Approximately three minutes later, the panel indicated they had reached a verdict. The panel president announced that they found appellant guilty of Charge I and its specification and of Specification 3 of Charge II and Charge II. The president did not announce any findings as to Specifications 1 and 2 of Charge II.

## II. LAW AND DISCUSSION

Appellant asserts on appeal that the military judge erred in failing to provide the panel with instructions on reconsideration when she sent them back for additional deliberations as to the specifications of Charge II. We disagree. This is not a case about the military judge directing the members to reconsider their findings but rather a direction to the panel to correct an improperly completed findings worksheet. As a result, the military judge was not required to provide instructions on reconsideration.

### A. Standard of Review

"'Whether a panel was properly instructed is a question of law' which we review de novo." *United States v. Mott*, 72 M.J. 319, 325 (C.A.A.F. 2013) (quoting *United States v. Garner*, 71 M.J. 430, 432 (C.A.A.F. 2012)). Here, appellant did not object to the military judge's supplemental instructions or request that she provide instructions on reconsideration. Accordingly, absent waiver, the standard of review is plain error. *Garner*, 71 M.J. at 434. Under plain error review, we will grant relief only where (1) there was error, (2) the error was plain and obvious, and (3) the error materially prejudiced a substantial right of the accused. *Id.* (citing *United States v.*

*Sweeney*, 70 M.J. 296, 304 (C.A.A.F. 2010)).  Whether an appellant has waived an issue is a legal question we review de novo.  *United States v. Haynes*, 70 M.J. 17, 19 (C.A.A.F 2019).  As our superior court recently emphasized, waiver is the "'intentional relinquishment or abandonment of a known right.'"  *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)).  In *Davis*, our superior court concluded that an appellant who not only failed to object to the military judge's instructions but who also "bypassed an offered opportunity to challenge and perhaps modify the instructions" affirmatively waived an objection to the military judge's instructions.  *Id.*  Having found an affirmative waiver, the court concluded there was no error to correct on appeal.  *Id.* (citing *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009)).

We distinguish *Davis* from this case and find that appellant did not waive his right to object to the military judge's instructions to the panel when she sent them back for further deliberations.  Appellant did not possess all of the requisite information such that he could have intentionally relinquished or abandoned his known right to object to the military judge's additional instructions to the panel members.  Appellant was not provided a copy of, nor allowed to view, the incomplete findings worksheet before the military judge solicited appellant's input on her additional instructions as is recommended by the Rules for Courts-Martial [R.C.M.].[5]

Here, appellant was only provided the opportunity to view the written question by the panel president.  We find that the incomplete findings worksheet, in the context of the panel president's question, was important to a knowing and intentional waiver of appellant's right either to object to the military judge's instructions or affirmatively request an instruction on reconsideration.  *See Gladue*, 67 M.J. at 314 (holding that a defendant may *knowingly* and voluntarily waive many of the most fundamental protections afforded by the Constitution as well as non-constitutional rights).  Appellant lacked critical information when he bypassed the

---

[5] "If the military judge examines any writing by the members or otherwise assists them to put findings in proper form, this must be done in open session and counsel should be given the opportunity to examine such a writing and to be heard on any instructions the military judge may give."  R.C.M. 921(d) discussion.  While we recognize that the Rule's discussion is not a categorical mandate to the military judge—especially due to its use of the word "should"— the language does indicate it is a best practice for military judges to solicit input from counsel on any assistance they provide to members in putting their findings in proper form.  *See United States v. Hardy*, 46 M.J. 67, 76 (C.A.A.F. 1997) ("Although it is prudent for a military judge to consult with counsel in the interest of avoiding an inadvertent misstep, the Government is correct that there is no legal requirement to do so prior to answering a question from the members.").

opportunity to challenge or request modification of the military judge's supplemental instructions to the members and therefore, we find there was no knowing waiver.[6]

## B. *Instructions on Reconsideration Were Not Required*

The UCMJ and the R.C.M. provide the procedural framework for how a court-martial votes on findings and reconsiders findings. "Each specification shall be voted on separately before the corresponding charge. The order of voting on several specifications under a charge or on several charges shall be determined by the president unless a majority of the members object." R.C.M. 921(c)(6)(A). "After the initial secret ballot vote on a finding in closed session, no other vote may be taken on that finding unless a vote to reconsider succeeds." R.C.M. 924 discussion. The members may reconsider any finding prior to its announcement in open court. R.C.M. 924(a).

Prior to the announcement of findings in open court, "[t]he military judge may, in the presence of the parties, examine any writing which the president intends to read to announce the findings and may assist the members in putting the findings in proper form." R.C.M. 921(d). Our superior court has made it clear that it is the responsibility of the military judge to ensure that any ambiguities or deficiencies in a court-martial's findings "are clarified before the findings are announced." *United States v. Augspurger*, 61 M.J. 189, 193 (C.A.A.F. 2005). This can be accomplished by "ask[ing] the members to clarify their findings" prior to the announcement. *Id.* at 192. A military judge's failure to clarify ambiguous or defective findings may result in error that cannot be rectified by an appellate court. *Id.* at 193.

The military judge sought to clarify the findings with the panel president, but she was deficient in doing so. The portion of the findings worksheet as to the specifications of Charge II was incomplete and not in proper form based upon the military judge's instructions. The worksheet indicated a "Guilty" finding as to Charge II without a finding of "Guilty" reflected for any of the underlying sexual assault specifications. When instructed by the military judge that the panel could only select one of the sexual assault specifications of which to find appellant guilty, but not all three, the panel president disclosed that "we did not make a collective decision on which spec to select." At that point, the military judge should have confirmed with the panel president whether the panel formally voted on each of the three specifications of Charge II. Doing so could have been accomplished without

---

[6] We note that upon completion of the court-martial when appellant had the opportunity to view the findings worksheet and possessed all relevant information, he asserted in his post-trial submission to the convening authority that the military judge erred in sending the panel back for additional deliberations.

disclosing the results of the vote on each specification and would also have provided complete information to the military judge, and the parties, in determining how to further instruct the panel. Additionally, she should have clarified with the panel president the exact meaning of his statement, "we did not come to a collective decision on which spec to select" regarding Charge II. These actions would have clarified, for the record, whether voting had occurred on each specification of Charge II. More importantly, these actions would have made it perfectly clear that the findings needed only to be clarified and not reconsidered.

Despite the military judge's failure to clarify the basis for the incomplete findings worksheet or the statements by the panel president, the record supports the conclusion that the panel members initially followed the instructions to the extent that they voted on each of the three specifications under Charge II.[7] Given that panel members are presumed to follow the military judge's instructions to vote on the specifications of a charge and then the charge, it was evident from the findings worksheet that the panel had voted on all the three specifications of Charge II. "Absent evidence to the contrary, court members are presumed to comply with the military judge's instructions." *United States v. McFadden*, 74 M.J. 87, 90 (C.A.A.F. 2015) (quoting *United States v. Hornback*, 73 M.J. 155, 161 (C.A.A.F. 2014)). Even without the benefit of a copy of the findings worksheet when it was initially reviewed by the military judge, we conclude that the panel had voted on each of the sexual assault specifications when they lined through "Not Guilty" for each of them. Since the military judge initially instructed the panel that it could only find appellant guilty of one of the three specifications, the panel only needed to go back into deliberations to clarify the one specification of which he was to be found guilty.

Since the panel only needed to clarify its vote, we hold that the military judge properly returned the members to their deliberations to complete their findings as to the specifications of Charge II without having to provide instructions on the procedures for reconsideration. Only if the findings are illegal or defective may the military judge direct the members to reconsider those findings. *United States v. Perez*, 40 M.J. 373, 377 (C.M.A. 1994) ("[A] judge has authority to direct reconsideration of a defective verdict in the absence of an express provision to the

---

[7] We also recognize the that the military judge incorrectly presumed that the panel members had not voted on the specifications of Charge II as indicated in her colloquy with counsel in a subsequent Article 39(a), UCMJ, session. Even though we find the military judge's assumption misplaced, it did not make her actions in directing the members to properly vote each specification improper. Stated another way, even assuming she was correct in her assumption that they had not yet voted on the specifications under Charge II, that assumption only required proper instruction on how to vote each specification; it did not and would not require her to instruct on reconsideration as appellant alleges.

contrary[.]"). While our superior court has acknowledged that R.C.M. 924(a) provides "no express authority for the military judge to direct reconsideration," it has nevertheless concluded that a military judge has the authority to do so and that such practice is consistent with federal district courts. *Id.* at 377. However, reconsideration instructions were not required nor appropriate in this case. Given that the panel members had formally voted on each of the specifications of Charge II but had failed to select just one of the sexual assault specifications of which to find appellant guilty, this was not a situation in which the panel needed to reconsider or alter a finding of guilty or not guilty. Rather, the panel needed to clarify which of the three specifications would be the one specification of which they would find appellant guilty, based upon the military judge's instructions. Therefore, the military judge did not err in not providing reconsideration instructions. Because appellant has failed to establish an error concerning the necessity of reconsideration instructions, we need not address the remaining prongs of plain error. *See United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018) (noting all three prongs of plain error must be established).

## C. *Irregular Entry of Findings*

Although not raised by the parties, we find the military judge erred in instructing the panel members that they were not required to vote on all specifications of Charge II. As a result of her error, an irregular entry of findings occurred as the panel did not sufficiently indicate its findings as to Specifications 1 and 2 of Charge II.

The use of alternative charging strategies is well-established in military law. *See United States v. Elespuru*, 73 M.J. 326, 329 (C.A.A.F. 2014). While military judges differ on how they choose to instruct members on alternatively charged specifications, the end result must ensure that an accused does not stand convicted of alternatively charged offenses. *Id.* ("While the Government's [alternative] charging strategy was appropriate, we disagree that both convictions may stand.").

The instructions used by the military judge in this case are similar to instructions used in other cases with alternative charging strategies. *See, e.g., United States v. Stewart*, 71 M.J. 38, 41 & n.5 (C.A.A.F. 2012) (discussing the military judge's instructions to the panel that they could return a finding of guilty for "one but not both" of the alternatively charged specifications); *United States v. Owens*, 2017 CCA LEXIS 541, *2 n.2 (A.F. Ct. Crim. App. 8 Aug. 2017) (unpublished). Certainly, however, there are other ways military judges can instruct members on alternatively charged specifications. For example, this court and all of our sister courts have endorsed the practice of conditional dismissals. *United States v. Hines*, 75 M.J. 734, 738 n.4 (Army Ct. Crim. App. 2016) (citing *United States v. Britton*, 47 M.J. 195, 203 (C.A.A.F. 1997)) (Effron, J., concurring); *United States v. Guzman*, 79 M.J. 856, 865 (C.G. Ct. Crim. App. 2020). In cases where conditional

dismissal is used to address multiple guilty findings for offenses charged in the alternative, the military judge instructs the members to vote on and return findings for all alternatively charged specifications. Had this practice been used in appellant's case, the panel would have returned findings for all three specifications of Charge II. If the panel returned findings of guilty on more than one of the alternatively charged specifications, all but one of the convictions would have been dismissed at trial on the condition that the remaining conviction survive appellate review. While the use of conditional dismissals is the "favorable" approach, it is not the only acceptable practice. *Hines*, 75 M.J. at 738 n.4. However, the manner in which the military judge instructed the panel in this case led to confusion by the panel and then ultimately, erroneous instructions by the military judge.

The additional procedural voting instructions the military judge provided before returning the panel to its deliberations were not only problematic but were clearly erroneous. Before sending the panel members back to clarify their findings on the specifications of Charge II, the military judge instructed the panel that they could return a finding of not guilty on all three specifications or guilty as to only one of the sexual assault specifications, but not more than one. If the panel voted on a specification and obtained the required six votes, then the panel was to *cease voting* on the remaining specifications of Charge II and if they did not obtain the requisite six votes on a specification then they were to move on and vote on the next specification of Charge II. The Rules, however, require that "[e]ach specification *shall be* voted on separately. . ." R.C.M. 921(c)(6)(A) (emphasis added); R.C.M. 918. An accused "is entitled to a separate vote upon each specification." *United States v. Dilday*, 47 C.M.R. 172, 174 (A.C.M.R. 1973). The military judge's instructions to the panel members to cease voting on the specifications of Charge II once they reached a finding of guilty as to one of the specifications was contrary to required procedure.

Based upon the military judge's erroneous instructions, the panel members did not document their findings as to Specifications 1 and 2 of Charge II and indicated such by crossing out both the words "Guilty" and "Not Guilty" on the findings worksheet. As a result, no findings were announced in open court for either of those specifications as contemplated by R.C.M. 918(a).[8] Thus, we are left with two specifications in this case for which there are no findings in the record.[9]

---

[8] We caution military judges to ensure that complete findings are announced. Where findings are faulty, the military judge should take immediate appropriate corrective action in open court.

[9] The promulgating order, dated 26 February 2019, erroneously states appellant was

(continued . . .)

REYES-LESMES—ARMY 20180396

Appellant was entitled to a finding as to all specifications of Charge II. The accused's right to an announcement of findings in open court is a substantial one. *United States v. Boland*, 20 U.S.C.M.A. 83, 42 C.M.R. 275 (1970); *Dilday*, 47 C.M.R. at 174. Any erroneous announcement of findings must be corrected before final adjournment of the court-martial which did not occur in this case. R.C.M. 922(d). We find that the discrepancy between the charges and specifications and findings announced in open court requires corrective action on our part. Given that the panel members were instructed to cease voting on the specifications of Charge II if they reached the requisite votes for a finding of guilty as to one of the specifications and the lack of entry of a finding for Specifications 1 and 2 of Charge II, we find the appropriate remedy is to dismiss those specifications rather than enter a finding of not guilty. We distinguish this case from cases in which this court entered a finding of not guilty for specifications in which no finding was entered at trial. We do so because the alternative theories in this case were not inconsistent or mutually exclusive. *Cf. United States v. Johnson*, 22 M.J. 945, 946 (A.C.M.R. 1986) (noting the government's "inconsistent" charges of indecent assault and adultery and entering a finding of not guilty to the adultery offense despite no announced finding on that offense). Additionally, this is not a case where the panel members "lined out" all inapplicable portions of the findings worksheet. *Cf. Stewart*, 71 M.J. at 41 n.5 (treating the panel's lining out of an alternatively charged specification as a finding of not guilty for the offense); *Johnson*, 22 M.J. at 946 (treating the panel's lining out of an offense as "tantamount to a finding of not guilty").

## CONCLUSION

Specifications 1 and 2 of Charge II are DISMISSED. The findings of guilty of Charge I and its Specification and Specification 3 of Charge II and Charge II are AFFRIMED. The sentence is AFFIRMED.

Judge SALUSSOLIA concurs.

---

(. . . continued)
found "Not Guilty" of Specifications 1 and 2 of Charge II. We correct this by changing the findings of Specifications 1 and 2 of Charge II from "Not Guilty" to "None Entered."

ALDYKIEWICZ, Senior Judge, concurring:

I concur. A careful and critical review of the findings worksheet in appellant's case, the instructions given, both initial and supplemental, and the questions asked by the panel president, leads me to the following conclusions:

1. The panel members were initially and properly instructed to vote on the specifications under Charge II and then the charge;

2. The panel, complying with the military judge's initial instructions, found appellant guilty of all three specifications under Charge II, any one of which supported a finding of guilty to Charge II;[10]

3. The panel lined through "(Not Guilty)" for all three specifications of Charge II but failed to circle "(Guilty)" for any specification;

4. In compliance with the military judge's initial instructions, the panel circled "(Guilty)" and lined through "(Not Guilty)" for Charge II;

5. The panel's failure to circle "(Guilty)" for any of the three specifications of Charge II stemmed from the military judge's initial instructions that appellant could only be found guilty of one specification of Charge II;

6. Upon review of the findings worksheet, the military judge returned the findings worksheet to the panel president "for a little clarification;"

7. The discussion that followed resulted in supplemental instructions by the military judge;

8. The supplemental instructions resulted in the question (Appellate Exhibit (AE) XXXVI (36)) undergirding appellant's assignment of error: "How do we determine which spec to select and does it matter? We did not make a collective decision on which spec to select"; and

---

[10] I reach this conclusion by negative implication. In other words, by lining through "(Not Guilty)," the members were lining through that which did not apply, necessarily finding that which applied. What the panel did not do prior to the supplemental instructions was pick the specification for which they would announce a finding of guilty. My conclusion is unchanged notwithstanding the military judge's Article 39(a), UCMJ, colloquy with counsel following her supplemental instructions to the panel wherein she opined that the panel had not voted on the individual specifications, a conclusion contradicted by the very findings worksheet she was reviewing. *See supra* n.7.

9. In response, the military judge, in essence, advised the panel president that should the members agree on a finding of guilty for any specification under Charge II, the finding for that specification would be guilty and they were to stop all discussions and voting on the remaining specifications under Charge II, a conclusion confirmed by the panel president.[11]

---

[11] The following colloquy immediately preceded the panel's return to the deliberation room to clarify their findings:

PRES: I just--wondering about the selection of the ordering.

MJ: Right, up to you. So go back there, remember my saying you go back there--full and, you know, free discussion of all the evidence that you have heard. And part of that discussion talk about which order you want to vote on first, whether it's one, two, three; three, two, one, up to you. I am not going to dictate to you one way or the other so you as the president, you're the senior guy so you decide.

PRES: But no matter what order I pick as long--if we----

MJ: Right. As long----

PRES: ----if we reach----

MJ: Right. So let's say you start with two---

PRES: If we don't reach--if we were to not reach. . .

MJ: Let me see if I----

PRES: Whatever order I pick, if we determined not guilty, we would move on to the next.

MJ: Right.

PRES: If we were to determine guilty we would then stop and not review the other ones.

MJ: Yes.

PRES: Okay. And the order is otherwise inconsequential.

MJ: Yes.

(continued . . .)

A review of the physical markings on the findings worksheet (AE XXIX (29)) is consistent with the conclusions laid out above. The lines through "(Not Guilty)" for Specifications 1, 2, and 3 under Charge II appear to differ from the line that bisects "(Guilty)(Not Guilty)" for Specifications 1 and 2 of Charge II. In other words, the physical evidence appears consistent with the following: (1) the panel voted and found appellant guilty of all three specifications under Charge II and Charge II, but failed to pick which specification consistent with the military judge's initial guidance that appellant could only be guilty of one specification; and (2) thereafter, the panel entered findings to only one specification under Charge II, again consistent with the military judge's guidance, resulting in the irregular entry of findings addressed in the majority opinion.

Military judges and practitioners are encouraged to review *United States v. Guzman*, 79 M.J. 856 (C.G. Ct. Crim. App. 2020) and the discussion therein regarding the handling of alternative pleadings and the entry of findings for such pleadings. Finally, what might appear to some to be speculation on my part, or perhaps on the part of my colleagues in the majority opinion, is easily avoided had the military judge simply provided the panel with a new findings worksheet and frozen, in time, AE XXIX as it appeared prior to her efforts to seek clarification.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

(. . . continued)

PRES: Okay. Then yes, I understand, Your Honor.

MJ: Okay. Yes. All right. Just so--I am going to--I am going to turn Exhibit--Appellate Exhibit XXIX [Findings Worksheet] back to you.