# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40350 (f rev)**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Kaye P. DONLEY**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 11 June 2024

———————————

*Military Judge*: Brett A. Landry; Brian T. Thompson (remand).

*Sentence*: Sentence adjudged 24 May 2022 by GCM convened at Fairchild Air Force Base, Washington. Sentence entered by military judge on 21 July 2022: Dishonorable discharge, confinement for 3 years, reduction to E-3, and a reprimand.

*For Appellant*: Major Samantha P. Golseth, USAF.

*For Appellee*: Lieutenant Colonel J. Peter Ferrell, USAF; Major Olivia B. Hoff, USAF; Captain Tyler L. Washburn, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, MASON, and WARREN, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Chief Judge JOHNSON and Judge WARREN joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

MASON, Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920, and one specification of assault consummated by a battery upon his spouse in violation of Article 128, UCMJ, 10 U.S.C. § 928.[1,2] Appellant was sentenced to a dishonorable discharge, confinement for three years, reduction to the grade of E-3, and a reprimand. The convening authority took no action on the findings or sentence.

Appellant originally raised six issues on appeal: (1) whether this court is unable to conduct its Article 66, UCMJ, 10 U.S.C. § 866, review because the verdict is ambiguous where the Government introduced two acts that could satisfy the elements of Specification 4 of Charge II when only one act was charged, the members received no instruction on which of the two acts was the charged act, and there is no way to know which act the members voted on, or whether they agreed on the same act; (2) whether the military judge committed prejudicial error by directing the members, without proper instruction, to review their completed findings worksheet and discuss whether six of the seven remaining members agreed on their findings when the panel president was excused before announcement of the findings; (3) whether Appellant was deprived of his right to a unanimous verdict as guaranteed by the Sixth Amendment,[3] the Fifth Amendment's[4] due process clause, and the Fifth Amendment's right to equal protection; (4) whether Appellant's record of trial is substantially incomplete because it omits the military judge's ruling on the Defense Motion in Limine to Exclude Evidence and Argument pursuant to Mil. R. Evid. 404(b), which should have been captured in Appellate Exhibit XXX; (5) "whether the Government's submission of an incomplete record of trial with this court tolls the presumption of post-trial delay under *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), and its progeny," when the record of trial is missing a required item under Rule for Courts-Martial (R.C.M.) 1112(b); and (6) whether the

---

[1] Unless otherwise indicated, all references to the UCMJ, the Military Rules of Evidence (Mil. R. Evid.), and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant was acquitted of three specifications of rape, Article 120, UCMJ, 10 U.S.C. § 920; and two specifications of aggravated assault and two specifications of battery upon a child, Article 128, UCMJ, 10 U.S.C. § 928.

[3] U.S. CONST. amend. VI.

[4] U.S. CONST. amend. V.

military judge erred by denying a defense motion to compel production of mental health records for an in camera review.

We agreed with Appellant with regard to issue (4) and granted the requested relief by remanding the case for correction of the record of trial. We deferred addressing Appellant's other allegations of error until the record was returned to this court for completion of our Article 66(d), UCMJ, 10 U.S.C. § 866(d), review. *See United States v. Donley*, No. ACM 40350, 2024 CCA LEXIS 115, at *6 (A.F. Ct. Crim. App. 19 Mar. 2024) (unpub. op.). The record of trial has been corrected with insertion of the missing appellate exhibit and returned to us for review.

Appellant maintains his remaining assignments of error and raises one additional assignment of error: (7) whether the Government can prove 18 U.S.C. § 922 is constitutional because its application is not consistent with the nation's historical tradition of firearm regulation, and whether the court can decide that question.[5] We have carefully considered this issue. As we recognized in *United States v. Vanzant*, __ M.J. __, No. ACM 22004, 2024 CCA LEXIS 215 (A.F. Ct. Crim. App. 28 May 2024), and *United States v. Lepore*, 81 M.J. 759 (A.F. Ct. Crim. App. 2021) (en banc), this court lacks authority to provide the requested relief regarding the 18 U.S.C. § 922 prohibition notation on the staff judge advocate's indorsement to the entry of judgment or Statement of Trial Results.

We have carefully considered Appellant's allegations of error that he was entitled to a unanimous verdict and find it does not require discussion or relief. *See United States v. Anderson*, 83 M.J. 291, 302 (C.A.A.F. 2023), *cert. denied*, 144 S. Ct. 1003 (2024). As to the remaining issues, we find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant met MD, a fellow Airman, in May 2004 at Aviano Air Base, Italy. The two began dating and were married in April 2005. MD described their marriage as "very volatile."[6] As of May 2019, the two had not had sexual intercourse since December 2018. MD was no longer sleeping in the marital bed; she had moved to another bedroom in the home.

---

[5] Appellant raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[6] Unless otherwise noted, the quoted clauses in this section are taken from MD's testimony.

In May 2019, the two were returning from church and were arguing on the drive home. Upon arrival at home, Appellant sent their children upstairs and closed and locked their doors behind them. Appellant called MD to the foot of the marital bed and told MD that he wanted to have sex with her. MD responded, "[N]o, I'm not gonna do that." Appellant pointed at the bed and said that they could do it "the easy way or the hard way, but no matter what you're going to get on the bed." MD told him again that she did not want to do that. MD walked to the end of the bed. Appellant "told [her] to take [her] panties off." MD did and said, "[P]lease don't do this. Please don't make me do this." Appellant did not say anything. He just pointed to the bed. MD got on the bed. Appellant took his clothes off and climbed on top of MD. MD tried to keep her legs closed but Appellant forced them apart with his knee. Appellant grabbed and held MD's arms down and penetrated her vagina with his penis. Appellant's penetration lasted approximately 20 minutes or more. MD described this as "slamming" that hurt "[v]ery much." When he was finished, Appellant rolled off and went to the bathroom. He returned with a washcloth and threw it at MD. She got up, limped to the bathroom, and cleaned off the blood and semen resulting from Appellant's assault. MD told Appellant, "You raped me." Appellant got very angry and went upstairs.

Appellant remained angry over the next several weeks. At some point during the day on 30 June 2019, he told MD he wanted her to come downstairs to his room so they could lay together and he would hold her while they watched a movie. MD was surprised but came to the room and laid down on the bed. Appellant began to kiss and touch MD, but MD was not aroused. Appellant became angry and screamed at her that everything was MD's fault. MD, scared, "put [her] hands over [her] ears and [she] screamed at the top of [her] lungs, stop it, stop it, stop it." Appellant called MD crazy. He grabbed her and pulled her to the edge of the bed. He picked her up and threw her across the room. Appellant then left the room and went upstairs. MD went to her room and hid in her closet. She stayed there until nighttime.

That night, MD went upstairs into the kitchen after Appellant had put the children to bed. MD sat down on an ottoman in the kitchen and asked Appellant why he did that to her. She told him that she loved him. Appellant became angry and rushed at MD. Appellant grabbed her by the throat and body-slammed her down to the ground hard enough to knock the air out of her lungs. Appellant eventually let her go after MD cried out to stop and said, "The kids." Appellant got up, walked downstairs, and went to sleep "like nothing had happened."

MD and Appellant often talked about the problems in their marriage. In August 2019, unbeknownst to Appellant, MD recorded one of those conversations. The recording was admitted into evidence at trial. During that

conversation, Appellant admitted that he body-slammed MD to the ground on 30 June 2019 and that he was wrong for doing it, and he acknowledged that he previously apologized for that. He stated that he lost control of himself completely. MD then confronted Appellant about why he raped her in May of that same year. Appellant stated that MD got on the bed "with hate in [her] eye" and that he proceeded to have sex with her. He emphasized, "I had sex with you. You did not have sex with me." When MD asked him why he did that to her, Appellant stated that he tried to talk to her about how he felt. He stated that MD's response was to scream at him, so he lost control and refused to "put up with that anymore."

In September 2020, Appellant and MD finalized their divorce.

## II. DISCUSSION

### A. Ambiguous Finding

Appellant avers this court cannot conduct a review of his conviction for assault consummated by a battery upon his spouse which alleged that he did "unlawfully slam [MD] to the ground with his hands" because the Government introduced evidence of two acts that could have met the elements of the alleged offense.

#### 1. Additional Background

Trial defense counsel conducted a thorough cross-examination of MD. Trial defense counsel asked MD first about the incident in the bedroom where Appellant threw her across the room:

> Q. Now you mentioned that he picked you up and threw you across the room, is that accurate?
>
> A. That is correct.
>
> Q. And you said that because that happened this night?
>
> A. Yes. That happened – that was during the day that happened. That wasn't the night yet.

Trial defense counsel then asked several questions attempting to illustrate that MD never told the Air Force Office of Special Investigations (AFOSI) in their interview of her about this incident where Appellant threw her across the room. MD stated that she did not remember in response to those several questions. Trial defense counsel then asked MD the following:

> Q. Can you describe again how [Appellant] picked you up and slammed you on the floor?
>
> A. Are you talking about June 30?

5

Q. Yes, ma'am.

A. Downstairs or upstairs later that evening.

Q. The charged offense.[7]

A. Yes. We were upstairs and our living room kitchen was open. I was sitting on the ottoman by the far end of the couch that's closer to the kitchen side and he was by the window side and he rushed towards me, not quite a run, but almost. He grabbed me around my throat and picked me up and actually carried me a few feet and slammed me down – body slammed like slammed me down.

Prior to instructing the members on findings, the military judge held three Article 39(a), UCMJ, 10 U.S.C. § 839(a), sessions to discuss the proposed instructions. During the first session, the parties discussed potential lesser included offenses, and trial defense counsel requested instructions on variance as well as the parental discipline instruction. After reviewing the proposed draft instructions, the military judge asked trial defense counsel, "Okay. Defense Counsel, any other substantive instructions that you wish to either request or object to?" Trial defense counsel replied, "Not at this time, Your Honor."

The military judge then stated that he had some concerns with the way the evidence was presented regarding one of the charged rape specifications of MD and one of the charged specifications of battery upon a child under the age of 16 years. He stated that

> there are a number of incidents that are not necessarily as part of the same course of conduct that could satisfy if the members found that they were proven beyond a reasonable doubt those offenses. Neither of those charged offenses is charged on divers occasions. What's the parties' position on whether an instruction is necessary to specify the incident that were – that should be before the parties or should be considered by the parties?

Trial defense counsel stated, "It's tough to say without seeing the instruction. I think it would be a little bit of an at least [ ] novel instruction." The military judge stated that he would draft something up and have the counsel review it. The military judge did not express concerns and the counsel did not raise any concerns or requests for any clarifying instructions regarding the charged

---

[7] The transcription of the record shows that trial defense counsel stated, "The charged the offense." However, a review of the audio recording shows that the trial defense counsel stated, "The charged offense."

specification for assault consummated by a battery upon his spouse that alleged Appellant slammed MD to the ground with his hands.

During the second Article 39(a), UCMJ, session, the parties discussed potential lesser included offenses and variance instructions and their applicability. When they were done discussing those issues, the military judge asked, "Any other objections, Defense Counsel?" Trial defense counsel replied, "No, Your Honor." The military judge then asked, "And no request for additional instructions at this time?" Trial defense counsel replied, "Yes, Your Honor – I mean, no request for additional instructions at this time."

During the third Article 39(a), UCMJ, session, the military judge informed the parties of his decision regarding instructing on lesser included offenses[8] and then asked, "With all that said, having reviewed the final draft instructions, does either party have any additional objections to the findings instructions or desire to request additional instructions at this time, Trial Counsel?" Trial counsel replied, "No, Your Honor." The military judge then asked, "Defense Counsel?" Trial defense counsel replied, "No, Your Honor."

The military judge instructed the members consistent with the draft instructions as discussed with the parties. When he completed instructing the members, the military judge asked, "Do counsel object to the instructions given or request additional instructions, Trial Counsel?" Trial Counsel replied, "No, Your Honor." The military judge then asked, "Defense Counsel?" Trial defense counsel replied, "No, Your Honor."

**2. Law**

We review de novo whether a verdict is ambiguous such that it precludes us from performing a factual sufficiency review. *United States v. Ross*, 68 M.J. 415, 417 (C.A.A.F. 2010).

A Court of Criminal Appeals (CCA), in the course of its review process, cannot conduct "a factual sufficiency review of an accused's conviction when 'the findings of guilty and not guilty do not disclose the conduct upon which each of them [were] based.'" *United States v. Trew*, 68 M.J. 364, 366 (C.A.A.F. 2010) (quoting *United States v. Walters*, 58 M.J. 391, 397 (C.A.A.F. 2003)).

"With minor exceptions for capital cases, a 'court-martial panel, like a civilian jury, returns a general verdict and does not specify how the law applies to the facts, nor does the panel otherwise explain the reasons for its decision to convict or acquit.'" *United States v. Brown*, 65 M.J. 356, 359 (C.A.A.F. 2007) (quoting *United States v. Hardy*, 46 M.J. 67, 73 (C.A.A.F. 1997)).

---

[8] These instructions did not relate to either of the offenses of which Appellant was convicted.

"A factfinder may enter a general verdict of guilt even when the charge could have been committed by two or more means, as long as the evidence supports at least one of the means beyond a reasonable doubt." *Id.* (citing *United States v. Griffin*, 502 U.S. 46, 49–51 (1991)) (additional citation omitted).

"It makes no difference how many members chose one act or the other, one theory of liability or the other. The only condition is that there be evidence sufficient to justify a finding of guilty on any theory of liability submitted to the members." *United States v. Rodriguez*, 66 M.J. 201, 205 (C.A.A.F. 2008) (quoting *Brown*, 65 M.J. at 359).

### 3. Analysis

Regarding the convicted offense of assault consummated by a battery upon his spouse that alleged Appellant slammed MD to the ground with his hands, no ambiguity existed at trial as to what facts formed the basis of the specification as alleged, and having reviewed the record in its entirety, no ambiguity exists on appeal.

On direct examination, MD testified that Appellant became angry and rushed at her. She testified that Appellant grabbed her by the throat and body-slammed her down to the ground hard enough to knock the air out of her lungs. On cross-examination, when prompted by trial defense counsel to talk about the charged offense, MD testified, "He grabbed me around my throat and picked me up and actually carried me a few feet and slammed me down – body slammed like slammed me down."

At the conclusion of the presentation of evidence, neither the military judge nor the trial defense counsel raised any concerns about what evidence formed the factual basis of this offense. The military judge did raise concerns with evidence related to other offenses, but not this one. Notably, having been asked multiple times by the military judge if they had any requests for additional instructions or objections to the proposed and actual instructions, trial defense counsel had none related to this offense.

Based on the evidence presented and the clear, expressed understanding of trial defense counsel, we find no ambiguity that impedes our Article 66, UCMJ, review of Appellant's conviction for this offense. There is evidence sufficient to justify a finding of guilty on a theory of liability submitted to the members. *Rodriguez*, 66 M.J. at 205. Specifically, MD's testimony that Appellant did unlawfully slam her to the ground with his hands by grabbing her around her throat, picking her up and body slamming her down to the ground. We are

convinced beyond a reasonable doubt which conduct formed the basis for this specification and Appellant is not entitled to relief. *Ross*, 68 M.J. at 418.[9]

## B. Military Judge's Instructions

### 1. Additional Background

During the afternoon of Saturday, 21 May 2022, following argument by counsel and instructions from the military judge, the court members were excused to the deliberation room to begin their deliberations. Approximately four hours later, the members returned and told the military judge in open court that they had reached "a good breaking point" for the day. The military judge recessed the court until 0800 on Monday, 23 May 2022.

At 0804 on Monday, 23 May 2022, the military judge convened an Article 39(a), UCMJ, session. One of the certified trial counsel was present telephonically. The two other trial counsel were not present. The military judge stated that the three trial counsel had each tested positive for coronavirus and due to mandatory isolation and quarantine requirements were not permitted to be present in court. Following that session, the members were brought into the courtroom and the court was called to order. The military judge advised the court members of the situation and asked whether they would like a recess to test themselves or continue with their deliberations. After a brief recess to consult with the other members, the court president stated that they would like to continue deliberations. The military judge again closed the court and excused the members to continue their deliberations.

Approximately three hours later, the members reached a verdict. Before they were recalled to the courtroom, the military judge held an Article 39(a), UCMJ, session. Trial counsel was not physically present; one of the certified trial counsel was present telephonically. The military judge noted R.C.M. 805(c)'s prohibition against holding a session of the court-martial without having a certified trial counsel physically present and acknowledged that his previous brief sessions with the court members to put them back into deliberations

---

[9] To the extent that this assignment of error alleges instructional error regarding which conduct formed the factual basis of the offense, we find this claim waived. *See United States v. Davis*, 79 M.J. 329, 332 (C.A.A.F. 2020).

was done at his election and without any objections from the parties.[10] He noted another certified trial counsel could be present in court as early as the next morning.

Following this session, the military judge recalled the members and called the court to order. Trial counsel was not physically present. One of the certified trial counsel was present telephonically. The military judge confirmed that the members had reached findings. He advised the members that findings could not be announced without trial counsel physically present. He then directed the findings worksheet to be provided to the bailiff and for it to be sealed pending announcement. The military judge ordered the members not to discuss their findings with anyone and excused them pending arrival of the newly detailed trial counsel.

The next morning, the newly detailed, certified trial counsel was present when the military judge called an Article 39(a), UCMJ, session. At that session, the military judge relayed the court president had tested positive for coronavirus and the military judge noted that due to mandatory isolation and quarantine requirements, this member would not be able to serve as a court member that day. Trial counsel requested this member be excused and trial defense counsel stated that they concurred. With no objection from the Defense, the military judge excused this member, bringing the total court members on the panel from eight to seven. The military judge then discussed the potential issue of how to move forward with the reduced panel given the procedural posture of the case. The trial defense counsel stated, "[A]s I see this as playing out[,] we would send the members back into their closed session deliberations instructing them that given the seven-member panel now they require six votes for a finding of guilty." The military judge advised counsel that he would instruct

---

[10] R.C.M. 805 discusses the requirements with regard to presence of the military judge, members, and counsel. R.C.M. 805(c) states:

> As long as at least one qualified counsel for each party is present, other counsel for each party may be absent from a court-martial session. . . . For purposes of Article 39(a) sessions, other than presentencing proceedings under R.C.M. 1001, the presence of counsel may be satisfied by the use of audiovisual technology, such as video teleconferencing technology.

It was permissible for trial counsel to be present telephonically for Article 39(a), UCMJ, sessions under this rule. It was error for the military judge to hold a session *with the court members* without a certified trial counsel physically present. However, the parties did not object at trial. Appellant does not allege this error prejudiced him in any way. In our review of these unique circumstances, we do not find prejudicial error to any of Appellant's substantial rights caused by trial counsel's telephonic presence vice physical presence for this brief session.

the members, "that six of seven members [are] required to sustain a verdict of guilty in regard to any specification," and that he would also provide them again the instruction on reconsideration. Trial defense counsel stated, "Understood, Your Honor."

The military judge composed and read a draft instruction to the counsel. Trial defense counsel requested, "[s]omething to the effect about in assessing whether or not reconsideration of a verdict is appropriate, you should ensure that as comprised now, six of seven members have voted for a finding of guilty." The military judge declined to give that specific language finding that the draft instruction covered the concern expressed by defense counsel. Trial defense counsel then requested the military judge instruct as follows:

> In assessing whether or not reconsideration of a verdict is necessary that [sic] the panel should ensure that six of the seven remaining members have voted for guilty in order to find a verdict of guilty on a particular specification. If six out of seven votes cannot be ensured, then reconsideration is necessary.

The military judge determined that he would read the first sentence of that proposal but would not give the second.

The military judge brought the members in and advised them that the previous court president had been excused, notified the next senior court-martial panel member that he was the new court president, and instructed:

> As findings have not yet been announced in open court, they are still subject to reconsideration. This is particularly important now as I previously instructed you since you have -- since you had eight members, six members must have concurred in any finding of guilty. Now that the panel has been reduced by one, *six of the seven currently detailed members must have concurred in any finding of guilty*. As such, I'm going to send you back into the deliberation room with the findings worksheet and instruct you to review your findings. In assessing whether or not reconsideration of the verdict is necessary, *the panel should ensure that six of the seven remaining members concurred in a vote of guilty for any specification for which your original votes resulted in a finding of guilty*. If during your discussion for any reason to include the new composition of the panel any member expresses a desire to reconsider any finding as it is currently reflected on that worksheet I will bring you back into the courtroom and provide you with instructions on reconsideration. The president should announce only that reconsideration of a finding has been proposed. Do not state whether the finding proposed to be

11

> reconsidered is a finding of guilty or not guilty or which specification and charge is involved. I will then give you specific further instructions on the procedure for reconsideration. If on the other hand you confirm that your findings remain unchanged, you can let me know when you are back in the courtroom and we will proceed with the announcement of verdict at that time.

(Emphasis added).

No counsel objected to the military judge's instruction at any point. The court members were given back the findings worksheet and sent to the deliberation room. Nine minutes later the court reconvened with the members. The military judge asked the new court president, "[D]oes the findings worksheet still accurately reflect the findings of the panel or are you requesting reconsideration?" The president responded, "Sir, it still accurately reflects the findings of the panel, sir." The military judge reviewed the worksheet and had the president announce the findings.

**2. Law**

We review de novo whether the members were properly instructed, as a matter of law. *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014).

R.C.M. 912B states in relevant part:

> (a) *In general.* A member who has been excused after impanelment shall be replaced in accordance with this rule. Alternate members excused after impanelment shall not be replaced.
>
> . . . . (c) *Alternate members not available.*
>
> (1) *Detailing of new members not required.* In a general court-martial in which sentence of death may not be adjudged, if, after impanelment, a court-martial member is excused and alternate members are not available, the court-martial may proceed if—
>
> (A) There are at least six members; and
>
>> (B) In the case of an enlisted accused, the remaining panel composition is consistent with the specific panel composition established under R.C.M. 903.

R.C.M. 921 sets forth the process for member deliberations and voting. "Voting on the findings for each charge and specification shall be by secret written ballot. *All members present* shall vote." R.C.M. 921(c)(1) (emphasis added); *see also* 10 U.S.C. § 852(a)(3). "A finding of guilty results only if at least three-fourths *of the members present* vote for a finding of guilty." R.C.M. 921(c)(2) (emphasis added). "Once findings have been reached, they may be

reconsidered only in accordance with R.C.M. 924." R.C.M. 921(c)(6), Discussion.

"After the members have reached findings on each charge and specification before them, the court-martial shall be opened and the president shall inform the military judge that findings have been reached." R.C.M. 921(d).

"Except as provided in Mil. R. Evid. 606, members may not be questioned about their deliberations or voting." R.C.M. 922(e).

Under Article 59(a), UCMJ, 10 U.S.C. § 859(a), a court-martial finding may not be held incorrect by virtue of legal error "unless the error materially prejudices the substantial rights of the accused."

Where an appellant "affirmatively decline[s] to object to the military judge's instructions and offer[s] no additional instructions," he may thereby affirmatively waive any right to raise the issue on appeal. *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (citations omitted). Even "required findings instructions can be waived." *United States v. Rich*, 79 M.J. 472, 475 (C.A.A.F. 2020) (citations omitted).

### 3. Analysis

With regard to the timing of the deliberations, voting, and announcement on the findings, this case presents a cascade of circumstances relatively unforeseeable outside a global pandemic. In a matter of hours, three trial counsel were rendered unavailable to proceed due to illness in the middle of member deliberations. Exacerbating the situation, the court president was excused due to his unavailability/illness after findings had been reached, but before those findings were announced. To say that these circumstances are rare is a dramatic understatement. Despite the rarity of the circumstances, the Rules for Courts-Martial provide for the proper way ahead. The military judge did not adhere to the applicable rules and committed error.

Where the military judge went astray was after the president had been excused. The military judge, albeit with trial defense counsel's affirmative request to do so, erred when he instructed the members as follows:

> I'm going to send you back into the deliberation room with the findings worksheet and instruct you to review your findings. In assessing whether or not reconsideration of the verdict is necessary, *the panel should ensure that six of the seven remaining members concurred in a vote of guilty* for any specification for which your original votes resulted in a finding of guilty.

(Emphasis added).

At the time the military judge provided this instruction, the members had reached their findings. Both the military judge and trial defense counsel were under the impression that because the number of members had been reduced from eight to seven, that before they could announce their findings, six of the remaining members must have concurred in any finding of guilty. We disagree. The initial vote was final absent a request for reconsideration. We emphasize also that the excusal of a court member after a valid vote does not *ipso facto* require that a military judge instruct the court members as to "reconsideration" procedures.

"A finding of guilty results only if at least three-fourths of the members *present* vote for a finding of guilty." R.C.M. 921(c)(2) (emphasis added). The members were correctly instructed prior to their deliberations as follows:

> The concurrence of at least three-fourths of the members present when the vote is taken is required for any finding of guilty. Since we have eight members, that means six members must concur in any finding of guilty. If you have at least six votes of guilty, then that will result in a finding of guilty for that offense.

The record is clear that the votes on the findings were completed prior to the original president being excused. Those findings were the findings of the court. "Once findings have been reached, they may be reconsidered only in accordance with R.C.M. 924."[11] R.C.M. 921(c)(6), Discussion.

While not required, it was not error to remind the members about potential reconsideration of their previously reached findings (as the findings had not yet been announced) after the president had been excused. However, it was error to have them "ensure that six of the seven remaining members concurred in a vote of guilty for any specification for which [their] original votes resulted in a finding of guilty." Prior to that instruction, the findings of the court had already been reached, and the court members had not themselves requested reconsideration—as such, that instruction was inconsistent with R.C.M. 924. This is so because R.C.M. 924 is members driven—not counsel driven. Here, trial defense counsel essentially urged the military judge to prompt the members to undertake the functional equivalent of a reconsideration vote absent the court members themselves initiating a request for reconsideration or meeting the required voting threshold prerequisites for doing so.

Though we note that there was error in the military judge's instruction, we also note that Appellant's claim of error regarding the instructions on this issue

---

[11] R.C.M. 924, Reconsideration of Findings, sets forth the timing and voting procedures applicable when the members wish to reconsider a finding reached, but not yet announced in open court.

was waived. Trial defense counsel requested that the military judge instruct the members, "[Y]ou should ensure that as comprised now, six of seven members have voted for a finding of guilty." The military judge provided substantively that instruction. While it was error, not only did the Defense not object to the instruction when provided to the members, it was essentially what they requested. Under these circumstances, any claim of error with regard to this instruction is waived. *See Davis*, 79 M.J. at 331 (citations omitted).

Even assuming arguendo that this issue was not waived, there was no prejudice. *See* Article 59(a), UCMJ. The record is clear that the members did not modify their findings following the military judge's erroneous instruction to "review their findings." The military judge sent the members back to the deliberation room after having been instructed. When they returned, the military judge asked the new court president, "[D]oes the findings worksheet still accurately reflect the findings of the panel or are you requesting reconsideration?" The new president responded, "Sir, it still accurately reflects the findings of the panel, sir." The new president's response stating "still" conclusively demonstrates that there were no changes at all to the findings from the initial time the members memorialized their findings on the worksheet (prior to the original president's excusal) to the time they announced their findings in open court. Because there were no changes, the instructional error was harmless. Appellant is not entitled to relief.

## C. Motion to Compel Mental Health Records

Appellant challenges the military judge's denial of the motion to compel MD's records in order to conduct an in camera review. We find no error.

### 1. Additional Background

Pretrial, trial defense counsel provided notice of an intent to seek production of records of sessions between MD and various mental health providers seen over an 11-year timespan preceding her 3 September 2020 interview with AFOSI investigators.

MD told investigators Appellant convinced her that she was an abusive spouse. As a result, MD sought counseling to try to "fix herself." She was convinced that if she fixed herself, her relationship with Appellant would be better.

In May 2021, Appellant and MD litigated child custody in civil court. As part of that process, MD responded to interrogatories wherein she made several assertions. One assertion was that she received counseling from multiple providers for the effects of the verbal, emotional, physical, and sexual abuse perpetrated by Appellant. These effects included post-traumatic stress, trauma, and insomnia.

Trial defense counsel requested through discovery "MD's mental health or counseling records from 2004 to present that are within the possession, custody, or control of military authorities." Trial defense counsel also requested through MD's counsel "the names, contact information, and office information for all counselors [she] met with to discuss [her] relationship with [Appellant], along with the date ranges when [she] saw each counselor." MD's counsel advised trial defense counsel that MD would not provide the requested information unless ordered to do so by the military judge.

At trial, Appellant moved to compel the production of MD's counseling records from 2009 to present.[12] The military judge conducted the required closed hearing. He subsequently denied the motion to compel, finding that Appellant "has not specifically identified, under the applicable burden of proof, any specific, credible factual basis to demonstrate that matters within the records sought are reasonably likely to be of such central importance that the Defense's inability to access them would result in a violation of [Appellant]'s constitutional rights." He found that Appellant "offered no evidence regarding the contents of the records sought, thereby negating any reasonable likelihood that the records sought would reveal admissible evidence." Further, the military judge concluded, "To grant the Defense's motion under these circumstances would essentially be to find a constitutional requirement to allow access to an alleged victim's covered records whenever that alleged victim could be shown to have sought mental health counseling as a result of or contemporaneous with an incident underlying a charged offense." Finally, the military judge recognized that the records sought were not under military control and found that Appellant "failed to carry [his] burden to demonstrate that this evidence is necessary so as to justify production under [Mil. R. Evid.] 703."

**2. Law**

"This [c]ourt reviews questions regarding the scope of the patient-psychotherapist privilege established by the Military Rules of Evidence de novo." *United States v. Mellette*, 82 M.J. 374, 377 (C.A.A.F. 2022) (citing *United States v. Beauge*, 82. M.J. 157, 162 (C.A.A.F. 2022)).

Mil. R. Evid. 513 states:

> (a) *General Rule*. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to the psychotherapist, in a case arising under

---

[12] Appellant also moved to compel records related to the alleged child victim. That portion of the motion ruling is not challenged or relevant to this appeal as Appellant was acquitted of the specifications pertaining to the alleged child victim.

the Uniform Code of Military Justice, if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

A "military judge may examine the evidence or a proffer thereof in camera, if such examination is necessary to rule on the production or admissibility of protected records or communications." *Id.* "[W]here an [a]ppellant's motion to compel does not meet the standard laid out in [Mil. R. Evid.] 513(e)(3), a military judge does not have the authority to conduct an in camera review." *Beauge*, 82 M.J. at 166 (citation omitted). We review a military judge's ruling that an appellant failed to provide a sufficient basis for an in camera review pursuant to Mil. R. Evid. 513 for abuse of discretion. *United States v. Chisum*, 75 M.J. 943, 946–47 (C.A.A.F. 2016) (citations omitted).

Before a military judge may conduct an in camera review of the evidence pursuant to a motion to compel production of mental health records, the military judge must conduct a closed hearing and find by a preponderance of the evidence that the moving party seeking production made all four of the following showings:

(A) a specific, credible factual basis demonstrating a reasonable likelihood that the records or communications would contain or lead to the discovery of evidence admissible under an exception to the privilege;

(B) that the requested information meets one of the enumerated exceptions under subdivision (d) of this rule;

(C) that the information sought is not merely cumulative of other information available; and

(D) that the party made reasonable efforts to obtain the same or substantially similar information through non-privileged sources.

Mil. R. Evid. 513(e)(3).

**3. Analysis**

Appellant challenges the military judge's denial of the motion to compel MD's records in order to conduct an in camera review. He argues that MD's prior assertions to investigators as well as those made in the interrogatories from the civil matter established the factual basis required by Mil. R. Evid. 513(e)(3)(A). The military judge found that they did not. The record demonstrates that the military judge did not abuse his discretion in making this determination.

Trial defense counsel argued "[t]hose statements [made by MD to her counselors] will either be consistent or inconsistent with what she has said in other sources—such as AFOSI—or will say at trial, which will be crucial impeachment evidence." This argument illustrates the failure of Appellant to carry his burden on this issue. Specifically, Appellant failed to show that there was a factual basis showing a reasonable likelihood that the records contained or would lead to the discovery of evidence admissible under an exception to the privilege. As the military judge found, it was speculation what the records contained with regard to the content of any communications. Thus, it was pure speculation as to whether any impeachment evidence was contained in the records. The military judge's findings of fact were not clearly erroneous. He was correct in the applicable law and properly applied the law. The military judge did not abuse his discretion in denying Appellant's request to order an in camera review of the records at issue.

## D. Post-Trial Delay

### 1. Additional Background

The military judge sentenced Appellant on 24 May 2022. Appellant's record of trial was initially docketed with this court on 29 September 2022. Over Government's objection, this court granted Appellant's request for 13 enlargements of time to file his assignments of error brief. This brief was filed on 22 January 2024, 480 days after the case was docketed with the court. On 21 February 2024, the Government filed their answer to Appellant's brief. On 19 March 2024, 27 days later, this court issued the above-referenced opinion remanding the case for correction and completion of the record of trial setting strict processing deadlines for return for re-docketing and further briefing, and advising the parties that requests for enlargements of time for those deadlines would not be granted absent extraordinary circumstances. *See Donley*, 2024 CCA LEXIS 115, at *5–6.

On 2 April 2024, the record of trial was re-docketed with the court. On 19 April 2024, Appellant's counsel submitted a "merits brief" maintaining the original assignments of error, but adding no additional assignments of error with the exception of Appellant's personally raised issue regarding the staff judge advocate's indorsement. On 6 May 2024, the Government filed their answer to Appellant's personally raised issue.

### 2. Law

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *Moreno*, 63 M.J. at 135 (citations omitted). In *Moreno*, the United States Court of Appeals for the Armed Forces (CAAF) established a presumption of facially unreasonable delay where (1) the action of the convening authority is not taken within 120 days of the completion

of trial, (2) the record of trial is not docketed by the CCA within 30 days of the convening authority's action, or (3) appellate review is not completed and a decision is not rendered within 18 months of docketing the case before the CCA. *Id.* at 150. In *United States v. Livak*, 80 M.J. 631 (A.F. Ct. Crim. App. 2020), this court adopted the *Moreno* thresholds for facially unreasonable delay to the new post-trial processing regime that went into effect in 2019. Specifically, *Livak* established an aggregated 150-day standard for facially unreasonable delay from sentencing to docketing with the CCA for cases referred to trial on or after 1 January 2019. *Id.* at 633.

Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). The CAAF identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted). Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). We review de novo an appellant's entitlement to relief for post-trial delay. *Livak*, 80 M.J. at 633 (citing *Moreno*, 63 M.J. at 135).

### 3. Analysis

Appellant asks the court to find that docketing of an incomplete record of trial "does not toll the presumption of unreasonable delay" in the post-trial processing of a case. If we were to do so, a presumption of unreasonable delay would arise in this case and we would review the delay in accordance with *Livak*, 80 M.J. at 633. Appellant contends that our failure to do so will "incentivize" the Government to, in effect, prioritize speed over accuracy, increasing the likelihood that this court will need to remand the record for correction and ultimately delay our final decision in the case. Having asserted a facially unreasonable delay, Appellant does not provide a full analysis of the *Barker* factors or allege any specific prejudice. However, Appellant implies this court should find a due process violation and requests we not approve the adjudged punitive discharge or, in the alternative, reduce his period of confinement.

We decline to interpret *Moreno* and *Livak* in the manner Appellant suggests. To do so would be contrary to the plain meaning of those opinions. In *Moreno*, the CAAF stated the presumption of unreasonable delay applies

"where the record of trial is not docketed" by the CCA within the specified time frame. 63 M.J. at 142. As applied by *Livak*, that timeframe is within 150 days of sentencing. 80 M.J. at 633. In Appellant's case, the record *was* docketed within 150 days, and therefore no facially unreasonable post-trial delay occurred. Appellant does not direct our attention to any ruling by the CAAF or this court holding that a subsequent remand by the CCA to correct one or more errors in the record effectively extends or reopens the period under consideration for facially unreasonable delay until the corrected record is re-docketed, and we are aware of none. *Cf. United States v. Gammage*, No. ACM S32731 (f rev), 2023 CCA LEXIS 528, at *5–6 (A.F. Ct. Crim. App. 15 Dec. 2023) (unpub. op.) (finding original docketing of record with CCA 55 days after sentencing "categorically complied" with 150-day *Livak* standard for facially unreasonable delay despite subsequent remand due to incomplete record of trial).

On the other hand, neither the CAAF nor this court has held that the specific time standards in *Moreno* are the exclusive means by which an appellant may demonstrate a facially unreasonable delay for due process purposes. *See United States v. Greer*, No. ACM 39806 (f rev), 2022 CCA LEXIS 411, at *15 (A.F. Ct. Crim. App. 18 Jul. 2022) (unpub. op.) (citing *United States v. Swanson*, No. ACM. 38827, 2016 CCA LEXIS 648, at *21 (A.F. Ct. Crim. App. 27 Oct. 2016) (unpub. op.)). Put another way, *Moreno* and *Livak* are a shield for an appellant's due process rights, not a sword for the Government to wield against appellants. Accordingly, a facially unreasonable delay could potentially have occurred between Appellant's sentencing and initial docketing. However, Appellant has not alleged such a delay, and we discern none from the record. Accordingly, we find no violation of Appellant's due process rights during the period prior to docketing.

Recognizing our authority under Article 66(d), UCMJ, 10 U.S.C. § 866(d), we have also considered whether relief for excessive post-trial delay is appropriate for delay between sentencing and docketing. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude no such relief is warranted.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of the Appellant occurred.

Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court